# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RAMON A. LASAO, *et al.*,

    Plaintiffs,

v.

STEARNS LENDING COMPANY, *et al.*,

    Defendants.

Case No. 2:10-CV-01864-KJD-LRL

**ORDER**

    Presently before the Court is Defendants, BAC Home Loan Servicing, LP, Recontrust Company, N.A., Mortgage Electronic Registration System ("MERS"), and Aurora Loan Services', (herein referred to collectively as "Defendants," unless otherwise specified) Motion to Dismiss (#12). Plaintiffs filed a response in opposition (#14) to which Defendants replied (#16). Also before the Court is Defendants Stearns Lending Company ("Stearns") and Carriage Escrow, Inc.'s Joinder to Motion to Dismiss and Reply in Support of Motion to Dismiss (#17).

I. Background

    On or about February 22, 2005, Plaintiffs jointly purchased property located at 940 Encorvado Street, Las Vegas, Nevada 89138 ("Property"). Plaintiffs received a primary loan ("Loan 1") in the amount of $394,450 using the Property as collateral in connection therewith. Plaintiffs also executed a Deed of Trust designating Plaintiffs as borrowers/trustors, Stearns as the

1  original lender, Carriage as the original trustee and MERS as the beneficiary, "solely as a nominee
2  for Lender and Lender's successors and assigns."[1]
3  Plaintiffs also received a secondary loan (Loan 2) in the amount of $97,350.00 with a 5.6%
4  interest rate secured by Deed of Trust with Stearns as the lender, Carriage as the trustee and MERS
5  as the beneficiary, listed again "solely as a nominee for the Lender and Lender's successors and
6  assigned." See Complaint, ¶ 22. Plaintiffs subsequently defaulted on both loans, alleging that
7  "overvaluation of the Property and ... confusion over the terms of the loan and who serviced and
8  owned the loan caused Plaintiffs to question the true identity of their lender and who was entitled to
9  payment." See Complaint, ¶23.
10  Plaintiffs inquired about the true identity of the lender by sending a Qualified Written
11 Request to Defendants. According to the Notice of Default and Election to Sell, dated March 8,
12 2010, recorded by Recontrust, BAC was the creditor to whom the debt was owed. Subsequently,
13 Allstate Insurance Company, Mortgage Relations Center, sent a letter dated July 1, 2010 to Plaintiffs,
14 which informed them that the Plaintiffs' homeowner's insurance policy would be cancelled on
15 August 12, 2010 due to a change in lender and that Aurora, the new lender, had requested the
16 policy's cancellation.
17 Plaintiffs were allegedly unaware that Recontrust was the purported successor trustee or that
18 BAC was the purported successor lender prior to Plaintiffs' receipt of the Notice of Default.
19 Plaintiffs further allege that they were unaware that Aurora was also a purported successor in interest
20 until they received the Homeowner's Policy cancellation notice from Allstate Insurance Company on
21 or about August 12, 2010. Additionally, Plaintiffs allege that MERS, Recontrust, BAC, and Aurora
22 were not assignees to the original note or debt identified in the Deed of Trust and that neither of these
23 Defendants had ever held an assignable interest in Plaintiffs' debt on the Property, thus, none of

---

[1] The Court takes judicial notice of the public records adduced by Defendants (Doc. No. 12, Exs. A-G). See Villa v. Silver State Fin. Servs., 2011 WL 1979868, at *1 (D. Nev. 2011).

them, according to Plaintiff, had the right to exercise the power of sale contained in the Deed of Trust.

II. Standard for Motion to Dismiss

Under Fed.R.Civ.P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Accordingly, there is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard is "more than a sheer possibility that a defendant has acted unlawfully," yet less than a "probability requirement." Id.

Pursuant to the two-prong analysis in Iqbal, the Court first identifies "the allegations in the complaint that are not entitled to the assumption of truth," meaning, those allegations which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. Only a complaint "that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.

III. Analysis

In their Complaint, Plaintiffs implicitly allege wrongful foreclosure under N.R.S. § 107.080, which governs nonjudicial foreclosures. Nevada recognizes the tort claim of wrongful foreclosure where a homeowner alleges that a lender wrongfully exercised the power of sale and foreclosed upon their property when the homeowner was not in default on the mortgage loan. See Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610, 623 (Nev. 1983). However, Plaintiffs do not dispute their

3

delinquency on the mortgage. Instead, they imply that the foreclosure was improper because of the securitization practices engaged in by Defendants.

### A. Defendants' Lack of Standing to Foreclose

Under Nevada law, the foreclosure process is commenced by the recording of a notice of default by the beneficiary, successor in interest of the beneficiary, or trustee. N.R.S. § 107.080(2)(c). After at least three months have elapsed, the trustee or other person authorized to make the sale under the terms of the deed of trust shall give notice of sale in accordance with the posting requirements for residential foreclosures. N.R.S. § 107.080(4). A foreclosure sale may be declared void if the trustee or other person authorized to make the sale did not substantially comply with the foreclosure statutes. N.R.S. § 107.080(5). Here, Plaintiffs allege that Recontrust was not "authorized to foreclose upon the Property because MERS was not authorized to transfer the beneficial interest in the mortgage loan." See Complaint, ¶ 37.

The Deed of Trust lists MERS as a "nominee for the Lender and Lender's successors and assigns." See Defendant's Motion to Dismiss (Doc. No. 12, Ex. C, p. 3 of 30). Plaintiffs allege that MERS' authority as a "nominee" is limited to acting as a form of agent for the lender, which according to Plaintiffs, does not allow MERS to assign, transfer or otherwise convey any interest in the note or Deed of Trust to any other entity.

Black's Law Dictionary defines "nominee" as "[a] person designated to act in place of another, [usually] in a very limited way.'' Weingartner v. Chase Home Finance, LLC, 702 F.Supp.2d 1276, 1279 (D. Nev. 2010). In short, "a nominee is an agent with limited powers, akin to a special power of attorney." Id. This applies to cases such as the present one, where an entity is nominated on a deed of trust by the holder of a promissory note, with the limited role of administering the deed of trust on the holder's behalf. Id. This definition indicates that a "nominee is a kind of agent working to the benefit of another." Id. In the present case, "that other person is the holder of the promissory note or its assigns." Id. Therefore, based on this definition, MERS, in its capacity as nominee, has the right to substitute a new trustee on the Deed of Trust. See id. at 1280.

4

Plaintiffs correctly note that MERS is not a beneficiary to the Deed of Trust and further allege that MERS has no standing to convey or transfer assignments. Courts within this jurisdiction have addressed the conflation of the terms "nominee" and "beneficiary" in boilerplate provisions within deeds of trust such as the one at issue here. These courts have concluded that:

> Although MERS is not in fact the beneficiary, the attempt to name it as such…indicates an intent to give MERS the broadest possible agency on behalf of the owner of the beneficial interest in the underlying debt. Such agency would include the ability to sell the interest in the debt.

Villa v. Silver State Fin. Servs., 2011 WL 1979868, at *1 (D. Nev. 2011). Furthermore, the Deed of Trust explicitly states:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument.

See Defendants' Motion to Dismiss (Doc. No. 12, Ex. C, p. 3 of 15). This language is "clear enough… to indicate that the parties intended MERS would be able to transfer the beneficial interest in the underlying debt directly." Villa, 2011 WL 1979868, at *1 (D. Nev. 2011). Furthermore, "it is even more clear that MERS may directly transfer the interest in the deed of trust itself...." Smith v. Community Lending, Inc., 2011 WL 1127046, at *2 (D. Nev. 2011). Accordingly, Plaintiffs have failed to allege any specific defect in the current foreclosure documents or proceedings prohibiting foreclosure under Nevada law.

Plaintiffs' allegation that foreclosure is improper because Defendants have failed to "possess and produce the…note to validate the powers vested under the Deed of Trust," (Plaintiffs' Opposition, Doc. No. 14, p 8 of 18) fails because "defendants do not need to produce the note to the property in order to proceed with a non judicial foreclosure." Clingman v. Somy, 2011 WL 383951, at *2 (D. Nev. Feb. 3, 2011). Case law within this district holds that N.R.S. § 107.080 "does not require a lender to produce the original note or prove its status as a real party in interest, [a] holder in

due course, current holder of the note, nominee of the current holder of the note, or any other synonymous status as a prerequisite to nonjudicial foreclosure proceedings." Kwok v. Recontrust Company, N.A., 2010 WL 4810704, at *4 (D. Nev. 2010); see also Ritter v. Countrywide Home Loans, Inc., 2010 WL 3829378, at *3 (D. Nev. 2010) ("[T]he court has consistently held that NRS § 107.080 does not require MERS or any other similar entity to show it is the real party in interest to pursue nonjudicial foreclosure actions.").

The Court concludes that U.S. Bank properly acquired beneficial interest under Loan 1, and therefore, the notice of default issued by Recontrust, and the notice of trustee's sale issued by Recontrust as substituted trustee, are apparently valid under Nevada statutes. Plaintiffs have therefore failed to allege any cognizable defect. See e.g. Berilo v. HSBC Mortg. Corp., USA, 2010 WL 2667218, at *4 (D. Nev. 2010) ("[N]othing prevents an authorized agent from recording a notice of default. Nor does Nevada law require a substitution of trustee be recorded prior to a notice of default."). Accordingly, Plaintiffs' first cause of action is dismissed with leave to file an amended complaint.

B. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that Stearns breached the implied covenant of good faith and faith dealing by failing to comply with the foreclosure avoidance provisions of "Civil Code § 2923.5(a)(1)(2)." See Complaint, ¶¶ 44-45. The cited provision is found in California's Civil Code, which does not apply to the present case. The Deed of Trust states that it is "governed by federal law and the law of the jurisdiction in which the property is located." See Defendants' Motion to Dismiss (Doc. No. 12, Ex. C, p. 12 of 30). Because the Property is located in Nevada, the foreclosure law of Nevada applies. Plaintiffs' subsequent allegations apply to the aforementioned provisions in the California Code and therefore this claim fails as a matter of law.

Additionally, Plaintiffs allege that the loan agreements between Plaintiffs and Stearns contained an implied covenant of good faith and fair dealing, which obligated Stearns "to refrain

6

from engaging in any conduct that would prevent Plaintiffs from fully enjoying the benefits of these contracts." See Complaint, ¶ 43.

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution.' Larson v. Homecomings Financial, LLC, 680 F.Supp.2d 1230, 1236 (D. Nev. 2009) (citation omitted). However, "[a]s a general matter, a court should not 'conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing.'" Davenport v. Litton Loan Servicing, LP, 725 F.Supp.2d 862, 884 (N.D. Cal. 2010). Plaintiffs fail to allege that Stearns acted contrary to the purpose of the agreements at issue. Rather, Stearns, as lender provided Plaintiffs with a loan amount which sufficiently covered the purchase price of the Property. Plaintiffs admittedly defaulted on this loan, thus breaching the express and implied purpose of the agreements.

A claim for tortious breach of the implied covenant fails as well because an action under this theory arises only in cases where a "special relationship" exists between a lender and a borrower. Mackintoch v. Jack Mathews and Co., 855 P.2d 549, 554 (Nev. 1993). However, generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Jacobs v. Bank of America, N.A., No. C10-04596, slip op., 2011 WL 250423 (N.D.Cal. Jan 25, 2011) (quoting Nymark v. Heart Fed. Savings & Loan Ass'n, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991)). Because Plaintiffs fail to allege that Stearns exceeded the scope of its role as a lender; fail to allege that Stearns did not act in accordance with the Deed of Trust; and because Plaintiffs cite to inapplicable statutory provisions, Plaintiffs' second cause of action is dismissed with leave to amend.

C. Fraudulent Misrepresentation

Misrepresentation is a form of fraud where a false representation is relied upon in fact. See Pacific Maxon, Inc. v. Wilson, 619 P.2d 816 (Nev. 1980). To state a claim for fraudulent misrepresentation in Nevada, a plaintiff must allege that (1) defendant made a false representation;

7

(2) defendant knew or believed the representation to be false; (3) defendant intended to induce plaintiff to rely on the misrepresentation; and (4) plaintiff suffered damages as a result of his reliance. See Barmettlo v. Reno Air, Inc., 956 P.2d 1382 (1998).

Fraud has a higher pleading standard under Rule 9, which requires a party to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). Pleading fraud with particularity requires "an account of the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).

Plaintiffs raise N.R.S. § 205.372 as a basis for their Fraudulent Misrepresentation claim, however, this statute and the entirety of Section 205 governs *crimes* against property. Criminal statutes cannot form the basis of a civil suit without express civil enforcement provision. See Burgess v. City and County of San Francisco, 49 F. App'x 122 (9th Cir. 2002). Accordingly, Plaintiffs' third claim for relief fails as a matter of law and is dismissed. However, the Court grants Plaintiffs leave to amend their Complaint to state a claim for fraud with the specificity required by Rule 9(b).

D. Fraudulent Concealment

To establish a prima facie case of fraudulent concealment under Nevada Law, a plaintiff must offer proof that satisfies five elements: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; that is, the defendant concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than she would have if she had known the fact; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; (5) and, as a result of the concealment or suppression of the fact, the plaintiff sustained damages. See Nevada Power Co. v. Monsanto Co., 891 F.Supp. 1406, 1415 (D. Nev. 1995).

Plaintiffs allege that during the loan application process, Defendants, failed to inform Plaintiffs that "based on their stated income, credit rating, and net worth," they were not qualified to

8

apply for the loan. See Complaint, ¶¶55-57. Plaintiffs further allege that Defendants "failed to independently verify Plaintiffs' financial ability to repay the loan," that Defendants knew or should have known that Plaintiffs were a very high risk of default and foreclosure, that Defendants concealed the risks and disadvantages of the loan's adjustable interest rate, and that Defendants concealed the fact that Plaintiffs had a right to cancel or rescind the loan for a limited amount of time.

For mere omissions to constitute actionable fraud, a plaintiff must first demonstrate that the defendant had a duty to disclose the facts at issue. See Nevada Power Co. v. Monsanto, 891 F.Supp. 1406, 1417 (D. Nev. 1995). "[A] duty to disclose arises from the relationship of the parties." Id. "A fiduciary relationship, for instance, gives rise to a duty of disclosure." Id. A duty to disclose may also arise where the parties enjoy a "special relationship," that is, where a party reasonably imparts special confidence in the defendant and the defendant would reasonably know of this confidence. Mackintosh v. Jack Matthews & Co., 855 P.2d 549, 553 (1993). Absent such a relationship, no duty to disclose arises, and as a result, no liability for fraudulent concealment attaches to the nondisclosing party.

Here, Plaintiffs fail to allege whether any of the Defendants had a duty to disclose any of the aforementioned facts. Furthermore, as established above, the relationship between Plaintiffs and Defendants did not constitute a special relationship. Thus, Plaintiffs' fraudulent concealment claim is dismissed with leave to amend.

### E. Unjust Enrichment & Civil Conspiracy

Again, Plaintiffs raise Section 205 of the Nevada Revised Statute, specifically NRS § 205.375, as a basis for this claim. For the aforementioned reason (see, supra, § C), Plaintiffs' claim fails as a matter of law.

Additionally, a valid claim of unjust enrichment in Nevada requires that plaintiff show: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of the benefit; and (3) acceptance and retention of the benefit by the defendant under circumstances that would be

inequitable for him to retain the benefit. See Topaz Mutual Co., Inc. v. Marsh, 839 P.2d 606, 613 (Nev. 1992). However, "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." Leasepartners Corp. v. The Robert L. Brooks Trust, 942 P.2d 182, 187 (Nev. 1997).

Plaintiffs allege that "Defendants' [sic] failed to insure [sic] that Plaintiffs understood all fees and the true cost of their credit, retained benefits of charging higher interest rates, fees, rebates, profits (including but not limited to sale of mortgages and notes)." Complaint, ¶ 61. Additionally, Plaintiffs allege that Defendants used "Plaintiff's [sic] identity, credit score and reputation without consent, right, justification or excuse as part of an unmeritorious enterprise scheme where Defendants were unjustly enriched by charging fees unrelated to the settlement services provided at closing." Complaint, ¶ 61.

Plaintiffs fail to sufficiently plead an unjust enrichment claim because they entered into express contracts upon execution of the Deed of Trust and note in connection with their loans. For the reasons mentioned above, the subsequent lender, trustee and substituted trustee had standing to proceed with the nonjudicial foreclosure pursuant to the Deed of Trust. Accordingly, Plaintiffs' unjust enrichment and civil conspiracy claims are dismissed with leave to amend.

G. Unconscionability

Plaintiffs concede their unconscionability claim with respect to Defendants BAC and Aurora, yet maintain their claim against Stearns alleging that Stearns presented mortgage documents to Plaintiffs with the knowledge of Plaintiffs' "inferior financial condition and credit history," in a "take it or leave it manner," thus affording Plaintiffs no opportunity to negotiate their mortgage interest or payment terms with Stearns. See Complaint, ¶ 66.

Unconscionability has both a procedural and substantive element. See Ting v. AT&T, 319 F.3d 1126, 1148-49 (9th Cir. 2003); see also Flores v. Transamerica HomeFirst, Inc., 113 Cal. Rptr. 2d 376 (Ct. App. 2001). The procedural element focuses on "oppression" or "surprise." See Flores, 113 Cal. Rptr. 2d at 381. Oppression arises from an inequality of bargaining power that results in no

real negotiation and an absence of meaningful choice. See id. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a pre-printed form drafted by the party seeking to enforce them. See id. A contract is procedurally unconscionable if it is a contract of adhesion, *i.e.,* a standardized contract, drafted by the party of superior bargaining strength that relegates to the subscribing party only the opportunity to adhere to the contract or reject it. Ting, 319 F.3d at 1149.

In Flores, defendant "unquestionably had superior bargaining strength in that it presented its preprinted [loan] documents, cast in generic language, to plaintiffs for signature." 113 Cal. Rptr. 2d at 382.  Additionally, plaintiffs were offered no opportunity to negotiate. Id. Ultimately, the Flores court held that the arbitration clauses within the loan agreement and deed of trust constituted a contract of adhesion because plaintiffs were offered no opportunity to negotiate. See id. Accordingly, a finding of a contract of adhesion is essentially a finding of procedural unconscionability.

The Court does not find that the loan and Deed of Trust constitute a contract of adhesion. Although the agreements were allegedly presented to Plaintiffs in a "take it or leave it manner" "the mere fact that a contract term is not read or understood by the non-drafting party or that the drafting party occupies a superior bargaining position will not authorize a court to refuse to enforce the contract." A&M Produce Co. v. FMC Corp., 186 Cal. Rptr. 114,122 (Ct. App. 1982).  "[A]n argument can be made that contract terms not actively negotiated between the parties fall outside the 'circle of assent,' which constitutes the actual agreement." Id. "[C]ommercial practicalities, however, dictate that unbargained-for terms only be denied enforcement where they are also substantively unreasonable." Id.

The substantive element of unconscionability has to do with the effects of the contractual terms- whether the contract is drafted in a one-sided manner, or whether it provides a "modicum of bilaterality." Id. Here, an arbitration clause is not at issue, rather Plaintiffs take issue with (1) the type of loan Defendants offered to Plaintiffs, (2) the material terms of that loan including, but not limited to, the interest rate(s) and repayment schedule, and (3) the power of sale and right to foreclose in the event of Plaintiffs' default.

1  Plaintiffs allege that the agreed upon payment and interest rate resulted in a higher cost of
2  financing than that reflected in the truth-in-lending payment schedule, yet later concede that they
3  overvalued the Property, thus causing them to default on the loan. Because this second element of
4  unconscionability rests on whether the effects of the contract terms were substantively unreasonable,
5  a causal connection between the terms of the loans and Plaintiffs' subsequent default is necessary to
6  sufficiently plead whether the loan and deed of trust were unconscionable. Because Plaintiffs fail to
7  do so, the Court dismisses this claim, with leave to amend.

### H. Quiet Title

In Nevada, a quiet title action may be brought "by any person against another who claims an…interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." N.R.S. § 40.010. In a claim for quiet title "the burden of proof rests with the plaintiff to prove a good title in [her]self." Velazquez v. Mortgage Electronic Registration Systems, Inc., No. 2:11–CV–576, slip op., 2011 WL 1599595, at *2 (D. Nev. Apr. 27, 2011) (quoting Breliant v. Preferred Equities Corp., 918 P.2d 314, 318 (Nev.1996)). Additionally, an action to quiet title requires a plaintiff to allege that she has paid any debt owed on the property. See Ferguson v. Avelo Mortgage, LLC. No. B223447, 2011 WL 2139143, at *2 (Cal. App. 2d June 1, 2011).  Essentially, "he who seeks equity must do equity." McQuiddy v. Ware, 87 U.S. 14 (1873). Although courts have power to vacate a foreclosure sale where there has been fraud, such as sham bidding and the restriction of competition, or inadequacy of price coupled with other circumstances of fraud in the procurement of the foreclosure decree, or where the sale has been improperly, unfairly or unlawfully conducted, "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 575, 578 (Cal. Ct. App. 1984). See also FPCI RE-HAB 01 v. E & G Investments, Ltd., 207 Cal. App. 3d 1018, 1021 (Cal. Ct. App. 1989) ("The rationale behind the rule is that if plaintiffs could not have redeemed the property

had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.").

Plaintiffs have failed to allege whether they were in the position to cure their default at the time the Notice of Default and Trustee's Sale was sent. This claim is therefore dismissed with leave to amend.

I. Declaratory and Injunctive Relief

Plaintiffs have failed to show a likelihood of success on the merits, an essential element of a claim for injunctive relief.  See Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers, 584 F.2d 308, 315 (9th Cir. 1978) (citations and quotations omitted).  Furthermore, the Court having dismissed Plaintiffs' claims for breach of contract, quiet title, and wrongful foreclosure, the Court dismisses Plaintiffs' claim for declaratory relief as moot, but grants leave to file an amended complaint.

IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (#12) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs shall file an amended complaint no later than fourteen (14) days following the entry of this Order.

DATED this 29th day of July 2011.

_____
Kent J. Dawson
United States District Judge